EXHIBIT "A"

# ORIGINAL

(Rev 3/85)

**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

```
F I L E D

AUG  1 0 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

By Mail
1FP

05 - 583

(1) Christopher Joseph Davis 225275
_(Name of Plaintiff)_        _(Inmate Number)_

S.C.I. /P.O.Box 500/ GEORGETOWN DE 19947
_(Complete Address with zip code)_

(2) _____
_(Name of Plaintiff)_        _(Inmate Number)_

_____
_(Complete Address with zip code)_

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

(1) Steven A. Bishop (98919)
(2) DEWEY BEACH POLICE DEPT.
Sam Mackert y CHIEF of Police, DEWEY BEACH
_(Names of Defendants)_
(4) THE TOWN of DEWEY BEACH
(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

(Case Number)
( to be assigned by U.S. District Court)

## CIVIL COMPLAINT

* * Jury Trial Requested

---

**I.    PREVIOUS LAWSUITS**

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

No    N/A

II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?  • (Yes) • •No    N/A

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?  • •(Yes) • •No    N/A

C.    If your answer to "B" is Yes:

   1.    What steps did you take?    N/A

   2.    What was the result?    N/A

D.    If your answer to "B" is No, explain why not:    N/A

III.    DEFENDANTS (in order listed on the caption)

   (1) Name of first defendant:    Steven A. Bishop

   Employed as    Patrolman    at    Dewey Beach Police Dept,

   Mailing address with zip code:    105 Rodney Ave.  Dewey Beach DE    19971

   (2) Name of second defendant:    Dewey Beach Police Dept,

   Employed as    N/A    at

   Mailing address with zip code:    105 Rodney Ave  Dewey Beach DE    19971

   (3) Name of third defendant:    Sam Mackert

   Employed as Chief of Police    at    Dewey Beach Police Dept

   Mailing address with zip code:    105 Rodney Ave  Dewey Beach DE    19971

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

   (4)    The Town of Dewey Beach
          105 Rodney Ave.
          Dewey Beach, DE  19971

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1.  On 5/15/05 in Dewey Beach, Del., I was involved in a traffic stop with Patrolman Bishop. As Patrolman Bishop testified in Superior Court on 7/7/05, he "flung me off " the hood of his car. He then forcibly cuffed and man handled me into the patrol car, al before

2.  placing me under arrest. I was denied the right to go to the bathroom and subsequently urinated on myself. Furthermore, patrolman Bishop failed to search my right hand pants pocket containing a lighter. This lighter later became a cause of endangerment to myself

3.  while I was in protected custody. The Police Department, Police Chief, and Town of Dewey Beaches are responsible for hiring and supporting such gross incompetence, unprofessional violence.

## V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1.  My arms were bruised up and down their entire length. I suffered nerve damage from the handcuffs being too tight and being thrown about. I was placed in danger of being burnt /possible loss of life. I wish patrolman Bishop charged with the use of unnecessary

3

2.  Force and/or assault and endangering the welfare of a prisoner. I wish to be compensated justly for pain, humiliation, and all future medical expenses stemming from this incident.

3.  

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __8th__ day of __August__, 2005

_____
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

EXHIBIT "C"

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

STATE OF DELAWARE

    VS.

CHRISTOPHER J DAVIS

Alias: No Aliases

DOB: 08/20/1969
SBI: 00225275

CASE NUMBER:              CRIMINAL ACTION NUMBER:
0505010323                S05-05-0408I
                         DUI ALC/DRUG-4T(F)
                         FS05-05-0407I
                         RECK BURN/EXPLD(M)
                         LIO:ARSON 2ND
                         S05-05-0409I
                         OFF TOUCHING LE(M)
                         S05-05-0410I
                         TERROR THREAT(M)

COMMITMENT
NON-INJURY- BUT DUI RELATED.
SEE NOTES FOR FURTHER COURT ORDER-TERMS/CONDITIONS

SENTENCE ORDER

NOW THIS  7TH DAY OF JULY, 2005, IT IS THE ORDER OF THE
COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.


  AS TO  S05-05-0408-I : NON-TIS
  DUI ALC/DRUG-4T

 The defendant is to pay a fine in the amount of $2000.00
plus all surcharges and fees (see attachment).

Effective July  7, 2005  the defendant is sentenced
as follows:

 - The defendant is placed in the custody of the Department
of Correction for 5 year(s) at supervision level 5


 - Suspended after serving 6 month(s)  at supervision level
5
**APPROVED ORDER**    1    July 12, 2005 14:07

STATE OF DELAWARE
            VS.
CHRISTOPHER J DAVIS
DOB: 08/20/1969
SBI: 00225275

- And

- Upon successful completion at supervision level 5 **KEY**


- Balance of sentence is suspended for 1 year(s)
supervision level 4 **RESIDENTIAL SUBS. ABUSE TREATMENT**

- Upon successful completion at supervision level 4
**RESIDENTIAL SUBS. ABUSE TREATMENT PRG.**


- Balance of sentence is suspended for 1 year(s)
supervision level 3 **AFTERCARE**

- Hold at supervision level 5

- Until space is available at supervision level 4
**RESIDENTIAL SUBS. ABUSE TREATMENT PRG.**

The first 6 MONTHS  of this sentence is a mandatory term
of incarceration pursuant to DE21417700A1FE .


Probation is concurrent to any probation now serving.


**AS TO PS05-05-0407-I : TIS**
**RECK BURN/EXPLD**

The defendant shall pay his/her restitution as follows:
$201.32 TO DEWEY BEACH PD

- The defendant is placed in the custody of the Department
of Correction for 1 year(s) at supervision level 5

- Suspended for 1 year(s)  at supervision  level 3


Probation is concurrent to criminal action number
05-05-0408 .


**AS TO S05-05-0409-I : TIS**
**OFF TOUCHING LE**

- The defendant is placed in the custody of the Department
of Correction for 30 day(s) at supervision level 5

**APPROVED ORDER**    2    July 12, 2005 14:07

STATE OF DELAWARE
        VS.
CHRISTOPHER J DAVIS
DOB: 08/20/1969
SBI: 00225275

  - Suspended for 1 year(s)  at supervision  level 3


  Probation is concurrent to criminal action number
05-05-0408 .


  AS TO  S05-05-0410-I : TIS
  TERROR THREAT

  - The defendant is placed in the custody of the Department
of Correction for 6 month(s) at supervision level 5


  - Suspended for 1 year(s)  at supervision  level 3


  Probation is concurrent to criminal action number
05-05-0408 .

SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
        VS.
CHRISTOPHER J DAVIS
DOB: 08/20/1969
SBI: 00325275

                              CASE NUMBER:
                                0505010323


The defendant shall pay any monetary assessments ordered
during the period of probation pursuant to a schedule of
payments which the probation officer will establish.


The defendant is to complete special programs of
instruction  pursuant to 21 Del.C. 4177( )


Pursuant to 21 Del.C.4177G, the defendant shall participate
in the Subsequent Offender Ignition Interlock Device


Defendant loses driving licenses/privileges pursuant to
statute .


There is no blood alcohol content to report as there was no
test administered.


Be evaluated for substance abuse and follow any
recommendations for counseling, testing or treatment deemed
 appropriate.


Should the defendant be unable to complete financial
obligations during the period of probation ordered, the
defendant may enter the work referral program until said
obligations are satisfied as determined by the Probation
Officer.


                              NOTES
The defendant may be placed in the Key Program while
serving his 6 month minimum mandatory sentence.


                         JUDGE T. HENLEY GRAVES


**APPROVED ORDER**     4     July 12, 2005 14:07

## FINANCIAL SUMMARY

STATE OF DELAWARE
      VS.
CHRISTOPHER J DAVIS
DOB: 08/20/1969
SBI: 00225275

                CASE NUMBER:
                0505010323


SENTENCE CONTINUED:

| | |
|---|---:|
| TOTAL DRUG DIVERSION FEE ORDERED | |
| TOTAL CIVIL PENALTY ORDERED | |
| TOTAL DRUG REHAB. TREAT. ED. ORDERED | 300.00 |
| TOTAL EXTRADITION ORDERED | |
| TOTAL FINE AMOUNT ORDERED | 2000.00 |
| FORENSIC FINE ORDERED | |
| RESTITUTION ORDERED | 201.32 |
| SHERIFF, NCCO ORDERED | |
| SHERIFF, KENT ORDERED | |
| SHERIFF, SUSSEX ORDERED | |
| PUBLIC DEF, FEE ORDERED | |
| PROSECUTION FEE ORDERED | 100.00 |
| VICTIM'S COM ORDERED | 360.00 |
| VIDEOPHONE FEE ORDERED | 4.00 |

---

TOTAL                                      2,965.32

SURCHARGES

STATE OF DELAWARE
        VS.
CHRISTOPHER J DAVIS
DOB: 08/20/1969
SBI: 00225275

CASE NUMBER:
        0505010323

| CRIM ACTION # | DESCRIPTION | AMOUNT |
|---------------|-------------|--------|
| S05-05-0408 | DRTE | 300.00 |
| S05-05-0408 | VCF | 360.00 |

**APPROVED ORDER**    6    July 12, 2005 14:07

EXHIBIT "D"

LEXSEE 2004 US DIST LEXIS 14956

GERALD S. SAMUELS, Plaintiff, v. DETECTIVE HALL, Defendant.

Civ. No. 03-150-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2004 U.S. Dist. LEXIS 14956*

July 19, 2004, Decided

PRIOR HISTORY: *Samuels v. Cunningham. 2003 U.S. Dist. LEXIS 14479 (D. Del., Aug. 14, 2003)*

DISPOSITION; [*1] Defendant's motion for summary judgment granted. Plaintiff's renewed motion for appointment of counsel denied as moot.

COUNSEL: Gerald S. Samuels, Plaintiff, Pro se, Georgetown, Delaware.

Rosamaria Tassone, Esquire, City of Wilmington Law Department, Wilmington, Delaware, Counsel for Defendant.

JUDGES: Sue L. Robinson, United States District Judge.

OPINIONBY: Sue L. Robinson

OPINION:

MEMORANDUM OPINION

Dated: July 19, 2004
Wilmington, Delaware

ROBINSON, Chief Judge

I. INTRODUCTION

On January 30, 2003, Gerald Samuels, a pro se plaintiff proceeding in forma pauperis ("plaintiff"), n1 filed the present action pursuant to *42 U.S.C. § 1983*, alleging a *Fourth Amendment* violation due to use of excessive force by Detectives Robert C. Cunningham, David M. Simmons, Barry J. Mullins, Scott C. Chaffin (collectively, "the arresting detectives"), and Detective Jonathan D. Hall. n2 (D.I. 2) The Wilmington Police Department was also named as a defendant. (Id.) On August 14, 2003 and May 25, 2004, plaintiff amended his complaint to further allege that the actions of the de-

tectives constituted the tort of assault under state law. (D.I. 31, 60) [*2]

n1 Plaintiff is currently incarcerated at Sussex Correctional Institute in Georgetown, Delaware. (D.I. 60 at 3)

n2 The detectives were all members of the Wilmington Police Department's Criminal Investigation Division at the time plaintiff's rights were allegedly violated.

Plaintiff's allegations stem from an incident that occurred on November 21, 2001, when the arresting detectives attempted to take plaintiff into custody for selling narcotics. (D.I. 60 at 2) Plaintiff admits that he repeatedly tried to escape, struggling against all four of the arresting detectives. (Id.) Plaintiff claims that he stopped struggling after a few minutes and allowed the arresting detectives to put him in handcuffs. Plaintiff asserts that Detective Hall ran up to him after he was handcuffed and "violently" punched him in his exposed rib cage, causing him to collapse. (Id.) Plaintiff claims that, by hitting him while he was handcuffed and cooperative, Detective Hall used excessive force in violation of the *Fourth Amendment* [*3] and the laws of the State of Delaware. (Id. at 3)

On August 14, 2003, the court granted the defendants' motion to dismiss as to the Wilmington Police Department and the arresting detectives, leaving Detective Hall ("defendant") as the sole remaining defendant. (D.I. 16, 27) The court has jurisdiction over plaintiff's § 1983 claim pursuant to *42 U.S.C. § 1331*. The court also has supplemental jurisdiction over plaintiff's state law tort claim pursuant to *28 U.S.C. § 1367*. Presently before the court are defendant's motion for summary judgment and plaintiff's renewed motion for appointment of counsel. n3 (D.I. 50, 55) For the reasons that follow, the court

2004 U.S. Dist. LEXIS 14956, *

grants defendant's motion for summary judgment and denies plaintiff's motion for appointment of counsel.

n3 Plaintiff's original motion for appointment of counsel was denied on August 14, 2003. (D.I. 6, 27)

## II. BACKGROUND

On November 21, 2001, the arresting detectives were returning to the police [*4] station in a police vehicle when Detective Cunningham ("Cunningham") announced that he had just witnessed plaintiff engaging in what appeared to be a drug transaction. (D.I. 52 at A-104) Cunningham asked the driver of the vehicle to stop so that he could investigate the incident. (Id. at A-105) Upon seeing the approach of the vehicle in which the arresting detectives were riding, plaintiff abruptly turned around and began walking away. (Id.) Cunningham and Detective Simmons ("Simmons") exited the car and called out to plaintiff. (Id.) Plaintiff subsequently turned and began walking toward Cunningham and Simmons. (Id.) Simmons noticed that plaintiff was cradling drugs between the palm of his hand and the lid of a coffee cup that he was holding. (Id. at A-114) Simmons ordered plaintiff to place his hands behind his back. (Id.) He grabbed plaintiff's wrist to prevent plaintiff from throwing hot coffee at him. (Id.) At that point, plaintiff pulled away from Simmons and began to run. (Id. at A-105) Cunningham grabbed the back of plaintiff's hooded sweatshirt and was dragged for a short distance until Simmons was also able to grab hold of plaintiff. (Id. [*5] ) Upon viewing plaintiff's attempt to escape, Detectives Mullins ("Mullins") and Chaffin ("Chaffin") exited the parked police vehicle to assist their fellow detectives. (Id.) Defendant, who was riding by the scene of the incident in a police vehicle driven by Detective Andrew C. Brock, observed plaintiff's struggle with the arresting detectives and exited the vehicle to aid his fellow detectives in the arrest. (Id. at A-107-A-108) Defendant approached plaintiff, whom he claims was not yet handcuffed, and "struck him once with a closed fist in the upper right side of his rib area and once in his left thigh." (Id. at A-108) The arresting officers were then able to take plaintiff into custody without any further struggle. (Id.) Later that day, Simmons and Chaffin took plaintiff to Wilmington Hospital (id. at A-103), where he was diagnosed with a fractured rib. (Id. at A-14) As a result of the incident that occurred on November 21, 2001, plaintiff pleaded guilty to charges of possession of a schedule I narcotic within 1000 feet of a school and resisting arrest. n4 (Id. at A-30)

n4 The state declined to prosecute possession with intent to deliver a schedule I narcotic and criminal impersonation charges against plaintiff. (D.I. 52 at A-30)

[*6]

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting [*7] Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

## IV. DISCUSSION

### A. The Parties' Contentions

Plaintiff alleges that he was handcuffed and compliant with the arresting detectives when defendant struck him, making defendant's blow a use of excessive force in violation of plaintiff's Fourth Amendment rights [*8] and Delaware state law. (D.I. 60 at 2-3) Defendant, in

rebuttal, contends that plaintiff was not handcuffed and was still vigorously resisting arrest when defendant struck him. Defendant claims that the force he used "in effecting plaintiff's arrest was objectively reasonable in light of the totality of the circumstances." (D.I. 50 at P1) Defendant also argues that he is immune from suit under both the doctrine of qualified immunity and the *Delaware County and Municipal Tort Claims Act* ("State Tort Claims Act"). (Id. at PP2, 4)

### B. Plaintiff's *Fourth Amendment* and Assault Claims

As plaintiff alleges a claim predicated upon the use of excessive force during his arrest, his claim must be analyzed under *Fourth Amendment* reasonableness standards. *Graham v. Connor, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)*. The *Fourth Amendment's* reasonableness standard is "not capable of precise definition or mechanical application." *Id. at 396* (quoting *Bell v. Wolfish, 441 U.S. 520, 559, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)).* The reasonableness test requires careful analysis of the "facts and circumstances of each particular case, including . . . whether [*9] the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner, 471 U.S. 1, 8-9, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985)).* Police officers are permitted to use a reasonable amount of force to effect an arrest; the degree of force is dictated by the suspect's behavior. Id. The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. (citing *Terry v. Ohio, 392 U.S. 1, 20-22, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)).* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id. at 396-397.* The question to be answered is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them [at that particular moment, regardless of] their underlying intent or motivation." *Id.* [*10] *at 397* (citing *Scott v. United States, 436 U.S. 128, 137-139, 56 L. Ed. 2d 168, 98 S. Ct. 1717 (1978); Terry, 392 U.S. at 21).* "An officer's evil intentions will not make a *Fourth Amendment* violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* (citing *Scott, 436 U.S. at 138* (citing *United States v. Robinson, 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973))).*

Viewing the facts and all reasonable inferences in a light most favorable to plaintiff, the court finds that there

are no genuine issues of material fact concerning the reasonableness of defendant's use of force. Though plaintiff's account of his altercation with the police differs from the rendition of events given by the detectives involved, the record reflects no evidence that plaintiff was handcuffed and compliant when defendant struck him in his rib area. In response to an interrogatory posed by defendant, plaintiff stated that he had an eye-witness to the event, Mamie Baynard ("Baynard"), who could confirm whether plaintiff was handcuffed when defendant hit him. (D.I. [*11] 52 at A-44) During her deposition, however, Baynard could hardly remember anything about the incident, including the date, month, time of day, or even the season in which the altercation occurred. (Id. at A-64) Although Baynard stated that it had been two years since the incident occurred, she added that she only knew that "because someone had said it was two years ago." (Id. at A-63-A-64) Likewise, Baynard was unable to recall how many detectives were present at the scene, what those detectives looked like, what plaintiff did when the detectives exited their car, how long the incident lasted, where she was going at the time, what she did after leaving the vicinity, or whether she was present for the entire altercation. (Id. at A-67-A-71) In fact, the only things Baynard did "remember" conflicted with the version of events that plaintiff set forth in his complaint. While plaintiff alleged that defendant hit him once in the ribs and once in the leg as he was being lifted off of the hood of the police car, Baynard stated that "what made [her] remember this whole situation after two years was the fact that [the detectives] were . . . beating [plaintiff] or doing something, [*12] kicking, beating, whatever, and [she] remember[s] saying, 'Well, they already have him down, they don't have to do all that to him.'" (Id. at A-67) In addition, Baynard stated that plaintiff was on the ground with the officers standing above him (id. at A-69), and said that she did not remember plaintiff being on the hood of a car. (Id. at A-73) Plaintiff's complaint made no mention of him being on the ground at all, let alone the idea that the arresting detectives kicked or beat him while he was down. Although plaintiff stated that Baynard's testimony would "reflect whether the plaintiff was [handcuffed] when he was struck" (id. at A-49), when specifically asked whether plaintiff was handcuffed during the incident, Baynard replied that she did not remember. (Id. at A-69)

In contrast, defendant and all four of the arresting detectives signed affidavits stating that plaintiff was not handcuffed and was actively resisting arrest when defendant struck him, despite repeated verbal orders to stop struggling and place his hands behind his back. (Id. at A-102-A-103, A-105-A-106, A-108, A-111-A-112, A-114-A-115). In addition, Detective Andrew C. Brock, the driver [*13] of the police car in which defendant was riding, stated that when defendant exited the car to assist

2004 U.S. Dist. LEXIS 14956, *

the arresting detectives, plaintiff was not handcuffed and continued to resist arrest. (Id. at A-100) The affidavits of the arresting detectives also state that defendant's actions "enabled [them] to safely handcuff plaintiff." (Id. at A-103, A-106, A-112, A-115). According to defendant,

> the actions [he] undertook to assist the other officers in arresting plaintiff complied with the use of force continuum as stated in the Wilmington Police Manual. n5 [He] did not employ any departmentally issued equipment against plaintiff. [His] actions were limited only to that force [he] reasonably believed necessary to sufficiently bring plaintiff under control and safely handcuff him in light of plaintiff's strenuous physical resistance to the officers' attempts to subdue him.

(Id. at A-108-A-109) Based upon this evidence, the record overwhelmingly supports defendant's assertion that plaintiff was not handcuffed and was vigorously resisting arrest when defendant struck him. As such, the court concludes that defendant's use of force, which quickly and safely [*14] allowed the arresting detectives to handcuff plaintiff, was "objectively reasonable" under the circumstances and did not violate plaintiff's *Fourth Amendment* rights or state law. Consequently, the court grants defendant's motion for summary judgment as to both plaintiff's *Fourth Amendment* and assault claims.

> n5 The continuum set forth in "Use of Force/Departmental Weapons Directive 6.7" reads as follows:

>> The use of force should follow a prescribed continuum: physical presence, verbal warning, verbal command, hands-on control, hands-on counter measures, intermediate weapon (which includes the choice of a chemical weapon, black jack, baton), and finally, if necessary, the use of deadly force. However, members should be mindful that the force needed to control an incident may not fall on the prescribed continuum sequentially in all circumstances. Therefore, members should use their discretion to quickly and safely apply the necessary level of force

to meet situations involving arrest, safety of citizens or officer self-defense.

(D.I. 52 at A-1)

[*15]

## C. Defendant's Immunity Defenses

Even if plaintiff could show a genuine issue of material fact as to the reasonableness of defendant's use of force, there are no genuine issues of material fact concerning defendant's immunity from suit under either the doctrine of qualified immunity or the State Tort Claims Act. Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).* A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton, 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987);* accord *In re City of Philadelphia Litig., 49 F.3d 945, 961 (3d Cir. 1995).*

When analyzing a qualified immunity defense, the court must first ascertain "whether plaintiff has [alleged] a violation of a constitutional right at all. [*16] " *Larsen v. Senate of the Commonwealth of Pa., 154 F.3d 82, 86 (3d Cir. 1998)* (citing *Siegert v. Gilley, 500 U.S. 226, 232, 114 L. Ed. 2d 277, 111 S. Ct. 1789 (1991)).* Next, the court must inquire whether the right was "clearly established' at the time the defendants acted." *Acierno v. Cloutier, 40 F.3d 597, 606 (3d Cir. 1994)* (quoting *Siegert, 500 U.S. at 232).* Finally, the court must determine "'whether a reasonable person in the official's position would have known that his conduct would violate that right.'" *Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp.2d 410, 419 (E.D. Pa. 1998)* (quoting *Wildinson v. Bensalem Township, 822 F. Supp. 1154. 1157 (E.D. Pa. 1993)* (citation omitted)). If no reasonably competent official could conclude on an objective basis that the official's actions were lawful, then a defendant is not immune from suit. However, "if [officials] of reasonable competence could disagree on this issue, immunity should be recognized.'" *In re City of Philadelphia Litig., 49 F.3d at 961-62* (quoting *Malley v. Briggs, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)).* [*17]

In the case at bar, the first two criteria for availing a qualified immunity defense are satisfied. The court thus

2004 U.S. Dist. LEXIS 14956, *

focuses its analysis on the third criteria, to wit, whether reasonably competent officials could objectively conclude that defendant's use of force was lawful. The court finds that officials of reasonable competence could disagree about whether defendant used excessive force during plaintiff's arrest. In fact, the four arresting detectives agreed that defendant's use of force was appropriate under the circumstances. As a result, the court finds that defendant is protected from liability for his use of force against plaintiff under the doctrine of qualified immunity.

Under the State Tort Claims Act, governmental entities and their employees are immune from suit for tort claims resulting from "the performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion be abused and whether or not the statute . . . under which the discretionary function or duty is performed is valid or invalid." *10 Del. C. § 4011(b)(3)*. However, "an employee may be personally liable for acts or omissions causing . . . bodily injury . . . for [*18] those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent." Id. at *§ 4011(c)*. When he struck plaintiff, defendant was acting within the scope of his employment. Likewise, the record reflects no evidence that defendant acted with "wanton negligence" or "willful and malicious intent." In addition, none of the exceptions to immunity listed in *10 Del. C. § 4012* apply to the case at bar. n6 Therefore, the court finds that defendant is entitled to immunity under the State Tort Claims Act. Accordingly, the court grants defendant's motion for summary judgment. n7

n6 Under *10 Del. C. § 4012*, a government entity is liable for its negligent acts or omissions which cause property damage, bodily injury, or death

(1) in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, . . .

(2) in the construction, operation or maintenance of any public building or the appurtenances thereto . . . [or]

(3) in the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water.

[*19]

n7 In light of the court's decision to grant defendant's motion for summary judgment, plaintiff's renewed motion for appointment of counsel is denied as moot.

V. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted. Plaintiff's renewed motion for appointment of counsel is denied as moot. An appropriate order shall issue.

ORDER

At Wilmington, this 19th day of July, 2004, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Plaintiff's motion for appointment of counsel (D.I. 55) is denied.

2. Defendant's motion for summary judgment (D.I. 50) is granted.

3. The Clerk of Court is directed to enter judgment against plaintiff and in favor of defendant.

Sue L. Robinson

United States District Judge