**EXHIBIT "1"**

CASE # 05-583-JJF
6/2/6

Plaintiff's response to defendants, Dewey Beach Police Department, Sam Mackert, chief of Police and Town of Dewey Beach, to dismiss plaintiff's complaint (Dated March 28, 2006):

1) Plaintiff holds Officer Bishop personally responsible for his actions. Mr. Connors has filed another motion to dismiss reguarding his individual circumstance. I reserve the right to reply to his individual motion in a seperate document and accordingly will only address the issues pertaining to the motion involving Mr. Mackert, The Dewey Beach Police Department and the Town of Dewey Beach.

2) It is not my intention to attempt to hold any of these defendants responsible under "respondeat superior theory." I greatly appreciate being afforded an opportunity to specify my allegations and have every intention to expand upon these allegations when the court orders the defendants to comply with my motion for discovery.

3) I hold Officer Mackert responsible in his individual capacity as the supervising officer overseeing officer Bishop. The court has deemed that "Supervision entails, among other things, training, obtaining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards and responding to unacceptable performance whether through individualized discipline or further rule making." Sample v. Diecks, 885 F.2d

1099 (3d Cir. 1989). Mr. Mackert was the supervisor responsible for Mr. Bishop and I contend that there will be evidentiary support of his negligence in duty when the court grants a reasonable opportunity for further investigation and discovery. Furthermore, I intend to show that Mr. Mackert, acting as Officer Bishop's supervisor, did create an atmosphere of indifference in reguards to such civil liberties violations. Mr. Mackert in his position as Chief of Police was imposed upon a duty to take steps to cite and correct behaviors by policy, training and reprimand. His failure to take the appropriate steps has in effect caused the deprivation of certain civil rights provided for by the constitution to myself and the public at large.

4) Mr. Mackert, The Dewey Beach Police Department, and the Town of Dewey Beach should have been well aware that there existed some gross inadequacy in their training procedures for police officers. The sheer number of complaints and civil suits alleging the use of excessive force and other similar civil liberties violations each year is a matter of public record. That the policy-makers would be witness to the constant onslaught of complaints and fail to recognize and act upon the inadegacies so obvious by circumstance amounts to deliberate indifference and a conscious choice by said policy-makers such that one could call it a

train may be proper where it can be shown that policy makers were aware of and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion. In such cases, the need for training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its officers confront the particular situation on a regular basis, and that they often react in a manner contrary to constitutional requirements." (Justice Brennan; City of Canton Ohio v Harris 109 S. Ct. 1197 (1989) @ 1209.)

The Municipality should be held liable because it has had excessive notice of prior misbehaviors by its officers and failed to take remedial steps amounting to deliberate indifference to the offensive acts.

The Municipality should be held liable because "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can be reasonably said to have been deliberately indifferent to the need." (quoting: Colburn v Upper Darby TP 946 F.2d 1017; 3rd 1991).

Thank you for your consideration,

Christopher Davis

225275

**EXHIBIT "2"**

1 of 1 DOCUMENT

SUSAN COLLINS, Plaintiff, v. PTLM. EDWARD FIGUEIRA, PTLM. CARLA GALVECKY, CHIEF SAM MACKERT and others as Police Officers for Dewey Beach Police Dept., and the TOWN OF DEWEY BEACH, Defendants.

C.A. No: 04C-06-009 (RBY)

SUPERIOR COURT OF DELAWARE, KENT

2006 Del. Super. LEXIS 266

June 16, 2006, Submitted
June 23, 2006, Decided

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**DISPOSITION:** Defendants' Motion to Dismiss GRANTED

**COUNSEL:** Susan Collins, pro se.

For Defendants: Kevin J. Connors, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware.

**JUDGES:** ROBERT B. YOUNG, J.

**OPINIONBY:** Robert YOUNG Y

**OPINION:** Young, J.

This matter comes before the Court on the Motion of Defendants to Dismiss all claims. The case was presented, as scheduled, on Friday, June 16, 2006. Plaintiff, though duly notified, failed to appear.

The following is the Court's decision upon review of the matters in issue.

Defendants, Chief Sam Mackert, the Dewey Beach Police Department, and the Town of Dewey, move this Court for an order dismissing the Complaint of Plaintiff, Susan Collins. On June 10, 2004, Plaintiff filed suit against Defendants for injuries she sustained as the result of an incident that occurred while Plaintiff was in the custody of the Dewey Police on June 11, 2002. Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim. n1

n1 Super. Ct. Civ. R. 12(b)(6).

[*2]

**FACTS**

The police report submitted in support of Defendants' motion indicates that Plaintiff was arrested by Dewey Beach Police after an individual complained that Plaintiff, who was intoxicated, continued to touch him, despite his repeated objections. Police approached Plaintiff, who was intoxicated, belligerent, and abusive. She threatened the officers with bodily harm, and verbally assaulted them with profanity. In addition, the police report indicates that she physically assaulted a female officer, and attempted to kick another officer, for which she was pepper-sprayed. Finally, while en route to State Police Troop 4 for processing, Plaintiff kicked out the rear window of the police cruiser with her bare feet.

Plaintiff's Complaint alleges that she sustained personal injuries, while in custody of the police. Plaintiff claims that the Dewey Beach Police Department was negligent in failing to supervise its officers, and the individual officers were liable for second degree assault and negligent infliction of emotional distress. Further, the Plaintiff makes claims of civil rights violations, pursuant to 42 U.S.C. § 1983. Plaintiff voluntarily [*3] dismissed the claims against the individual police officers, which this Court ordered on September 17, 2004. Therefore, the only claims that survive are those alleging negligent supervision and § 1983 violations.

An arbitration was held in this matter on May 10, 2005. The docket sheet reflects that Plaintiff's appeal from the Arbitrator's decision was filed on June 8, 2005, twenty-eight (28) days later.

On July 11, 2005, Plaintiff's attorney, Darryl K. Fountain received a three-year suspension from practicing law in Delaware. Plaintiff has not retained new

counsel. She represents herself *pro se*.

## DISCUSSION

In considering a motion to dismiss for failure to state a claim under Del.Super. Ct. Civ. R. 12(b)(6), this Court "must assume all well-pleaded facts in the complaint to be true." n2 As such, "[a] complaint will not be dismissed unless plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." n3 A complaint will not be dismissed for failure to state a claim "unless it is clearly without merit, which may be a matter of law or fact." n4 In addition, a complaint will not be dismissed unless "'[i]t appears [*4] to a certainty that, under no set of facts which could be proved to support the claim asserted, would the plaintiff be entitled to relief.'" n5 Rather, if the plaintiff may recover under a reasonably conceived set of circumstances, then the motion to dismiss must be denied. n6

  n2 *Read v. Carpenter*, 1995 WL 945544, at *1 (citation omitted).

  n3 *Id.*

  n4 *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

  n5 *Dunlap v. State Farm Fire and Cas. Co.*, 2004 WL 1427001, at *2 (Del. Super.)(quoting *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970)).

  n6 *Id.*

I. Plaintiff cannot maintain a claim against the Dewey Beach Police Department for negligent failure to supervise the patrolmen.

Count I of Plaintiff's Complaint alleges that the Dewey Beach Police Department is liable for Plaintiff's injuries, because it negligently failed to supervise the patrolmen who were involved in the incident. [*5] Plaintiff's claims make broad generalizations, alleging that the Dewey Beach Police Department was negligent, because it failed to ensure that the patrolmen complied with the department's procedures and fundamental guarantees of the United States Constitution. Plaintiff's claim, however, cannot be maintained, because the Dewey Beach Police Department is immune from liability pursuant to the Tort Claims Act. n7 The Tort Claims Act provides immunity for all governmental entities and their employees with certain narrow exceptions provided in § 4012. n8 None of those exceptions is applicable in the case at issue; therefore, Plaintiff's claims of negligent failure to supervise against the Dewey Beach Police Department are DISMISSED.

  n7 *10 Del.C. § 4011.*

  n8 *§ 4012* provides that "[a] governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances:

> (1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.
>
> (2) In the construction, operation or maintenance of any public building or the appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation.
>
> (3) In the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water."

[*6]

II. Defendants are not liable for violating Plaintiff's civil rights.

Plaintiff also alleges that Chief Mackert and the Town of Dewey Beach violated her *Fourth*, *Fifth*, and *Fourteenth Amendments* rights, pursuant to *42 U.S.C. § 1983*. Plaintiff claims that the Town of Dewey Beach violated her civil rights, because the Town failed to monitor adequately the inner workings of the Dewey Beach Police Department. Similarly, Plaintiff claims that Chief Mackert violated her civil rights, because he failed to train, supervise or control the officers under his direct command adequately. Plaintiff maintains that the actions of the Town of Dewey Beach and Chief Mackert rise to a level of gross negligence and recklessness that shocks the conscience.

A. Town of Dewey Beach

*Section 1983* permits an individual to bring suit

against a "person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" deprives that individual "of any rights, privileges, or immunities secured by the Constitution and laws." Although the language of § 1983 seems to limit the remedy for acts of a "person," the United [*7] Supreme Court has extended the application of § 1983 to municipalities and other local government units. n9 However, municipalities will not be liable under § 1983 under a theory of *respondeat superior* "solely because it employs a tortfeasor." n10 To sustain an action against a municipality, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the injury." n11 In addition, the municipality must be a 'moving force' that caused the alleged injury through its deliberate conduct. n12 "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." n13

> n9 *Monell v. Dept. of Social Services, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*.
>
> n10 *Bd. Of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)*.
>
> n11 *Id*.
>
> n12 *Id*.
>
> n13 *Id*.

In the present action, Plaintiff's conclusory statement [*8] that the Town of Dewey Beach violated her civil rights, because it negligently and recklessly monitored the inner workings of the Dewey Beach Police Department is insufficient to establish a § 1983 claim. Plaintiff has failed to allege a claim that the Town of Dewey Beach had a policy or custom that caused Plaintiff to suffer a violation of her constitutional rights. Additionally, Plaintiff's § 1983 claim is deficient, because Plaintiff has not proffered any facts supporting a causal link between the Town of Dewey Beach's alleged negligent and reckless monitoring of the Dewey Beach Police Department to the injuries Plaintiff allegedly sustained while in the custody of the Dewey Beach Police Department. For those reasons, Plaintiff's civil rights claims against the Town of Dewey Beach are **DISMISSED**.

B. Chief Sam Mackert.

Plaintiff also asserts a civil rights claim against Chief Mackert for his alleged failure to train, supervise or control the officers under his command. Government officials or actors may also be subject to liability under § 1983, if the plaintiff can prove that (1) the alleged conduct was "committed by a person acting under the color of state law," and [*9] (2) the plaintiff was deprived of a constitutional right as a result of that conduct. n14 Further, to maintain a § 1983 claim, the plaintiff must establish a "'causal link' between the official conduct and the alleged deprivation of a constitutional right." n15 Unlike state employees, n16 other government actors are not shielded from liability for § 1983 claims. State laws, like the Torts Claim Act, do not provide government actors with any additional protection from liability for a § 1983 claim. n17

> N14 *Reynolds v. State*, 1999 WL 1427760, at *12 (Del. Super.) (citing *Peat v. Neal*, Del. Super., C.A. No. 93C-12-206, Quillen, J. (Jan. 9, 1996) at 5, *app. dism.*, Del. Supr., No. 64, 1996, Berger, J. (March 12, 1996)(ORDER)).
>
> n15 *Id.* (citing *Gunzl v. Spayd*, 1995 WL 160352, at *5 (Del.Super.)).
>
> n16 *Davis v. Winslow*, 1994 WL 555315, at *2 (Del. Super.)(citing *Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)*)(holding that Delaware State Trooper, acting in an official capacity, was immune from § 1983 action).

[*10]

> n17 *Gunzl*, 1995 WL 160352, at *4 (citing *Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S. Ct. 553, 62 L. Ed. 2d 481, reh'g denied, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 506 (1980)*; *Kirschling v. Lake Forest School District, D.Del., 687 F.Supp. 927, 937 (1988)*).

However a government employee in a supervisory role "cannot be liable under *42 U.S.C. § 1983* merely because those under his supervision violate the constitutional rights of another." n18 A supervisor can only be liable if "he was the 'moving force [behind] the constitutional violation,' or 'exhibited deliberate indifference to the plight of the person deprived.'" n19 A supervisor's liability under § 1983 must be based on actual knowledge and acquiescence rather than *respondeat superior*. n20

> n18 *Alley v. Taylor*, 2001 WL 337245, at *3 (Del.Super.)(citing *Dickens v. Brewington-Carr*, 1999 WL 1240910 (Del.Super.)).
>
> n19 *Id.* (quoting *Sample v. Diecks, 885 F.2d 1099, 1118 (3rd Cir. 1989)*).

[*11]

n20 *Id.* (citing *Brown v. Stewart*, 910 F.Supp. 1064, 1074-75 (D. Pa. 1996)).

Similar to Plaintiff's civil rights claims against the Town of Dewey Beach, the claims against Chief Mackert cannot survive, because the Plaintiff does not allege and cannot establish a "causal link" between Chief Mackert's alleged failure to train, supervise or control the officers under his command and the alleged violation of Plaintiff's civil rights. In addition, Chief Mackert cannot be liable for the officers' alleged violations of Plaintiff's civil rights, because Plaintiff has failed to establish that Chief Mackert was the moving force behind the violations. Plaintiff has also failed to demonstrate that Chief Mackert exhibited any deliberate indifference to Plaintiff. Finally, Plaintiff's claims against Chief Mackert cannot survive, because Plaintiff cannot establish that Chief Mackert had any actual knowledge about the alleged violations. She does not allege and cannot show that Chief Mackert acquiesced to the officers' conduct. For those reasons, Plaintiff's civil rights claims against Chief [*12] Mackert are **DISMISSED**.

Accordingly, Defendants' Motion to Dismiss is **GRANTED**.

SO ORDERED.

/s/ ROBERT B. YOUNG

**EXHIBIT "3"**

4 of 4 DOCUMENTS

ANTHONY W. GUNZL, and LINDA GUNZL, Plaintiffs, v. DEBORAH SPAYD, PAUL REYNOLDS and NEW CASTLE COUNTY, Defendants.

C.A. No. 93C-09-089

SUPERIOR COURT OF DELAWARE, NEW CASTLE

1995 Del. Super. LEXIS 100

December 29, 1994, Submitted
March 28, 1995, Decided

SUBSEQUENT HISTORY: [*1]

Approved for Publication by the Court April 7, 1995.

DISPOSITION:

Upon Defendants' Motion to Dismiss – GRANTED

COUNSEL:

Anthony and Linda Gunzl, Pro Se Plaintiffs.

Collins J. Seitz, Jr., Esquire and James D. Heisman, Esquire, Wilmington, Delaware, Attorneys for Defendants Paul Reynolds and New Castle County.

JUDGES: Judge John E. Babiarz, Jr.

OPINIONBY: John E. Babiarz, Jr.

OPINION:

OPINION AND ORDER

Babiarz, Judge

Introduction

This pro se action was initiated by the plaintiffs Anthony and Linda Gunzl against their neighbor, Deborah Spayd, in September 1993. The complaint alleges that Spayd is liable to plaintiffs for a variety of torts including libel, slander and malicious prosecution. The allegations against Ms. Spayd are based upon assertions that she made a series of false complaints about plaintiffs to the police, public officials and various governmental entities. In July 1994, plaintiffs amended their complaint to name New Castle County and Paul Reynolds, a New Castle County employee, as added defendants. As amended, the complaint alleges that New Castle County and Reynolds conspired with Spayd and other county officials, not named in the complaint, to place in motion a course [*2] of conduct leading to harassment, invasion of privacy and deprivation of use of private land of the plaintiffs. This case is before the Court on a motion to dismiss filed by defendants New Castle County ("NCC") and Reynolds.

Defendants NCC and Reynolds argue that dismissal is proper under Superior Court Civil Rule 12(b)(6) because the complaint fails to state a claim upon which relief can be granted. In considering a motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations contained in the complaint. *Spence v. Funk*, Del. Supr., 396 A.2d 967, 968 (1978). The motion must be denied if the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint." Id. Mindful of these principles, the Court shall consider the sufficiency of plaintiffs' complaint.

Allegations of Plaintiffs' Complaint

Plaintiffs' allegations against NCC and Reynolds consist of the following: "On or about June 89 through April 93 New Castle County by and through its servant, Agent or Employee Paul Reynolds conspired with Deborah Spayd and other County Officials to place in motion a Course of Conduct leading [*3] to harassment, invasion of privacy and depravation of use of private land of the Plaintiffs as follows:

> (a) On or about June 89 through April 93 Paul Reynolds sought the help and aid of Deborah Spayd to monitor, spy on and report all activities of the Plaintiffs to New Castle County Complaints section regarding vehicles maintained on the property and construction at their home.
>
> (b) As a result of said conspiracy Deborah Spayd placed no less than 10 Criminal Complaints/Charges against Anthony Gunzl, requiring processing by the police. None of

these charges ever resulted in a conviction in a court of law and eventually most were dismissed as having no merit.

(c) As a result of said conspiracy and course of conduct Paul Reynolds placed many violations of the County Code against Plaintiffs, the bulk of which were violations not observed by Paul Reynolds but sworn to by him as being true and correct according to Court documents.

(d) During the Course of said Conspiracy Reynolds criminally charged Anthony Gunzl charged [sic] him 9 times for a trailer whose length was greater than 240 inches. However, not only was the length of the trailer incorrect but he did not physically observe [*4] the alleged violations 6 out of 9 times. In fact 20 criminal charges, one each day, were made various reasons [sic] daily from 2-6-1992 to 3-5-1992. However, a total of only 8 inspections were actually made. Reynolds sought and was given permission by the County Law Department to cite Gunzl for all days above, including those that he did not physically observe or have reliable information about.

(e) Reynolds failed to notify Plaintiffs personally or by certified mail, of the violations and allow for a corrections [sic] or defense of the violations. Mr. Reynolds instead chose to leave the letter with a 15 year old child. Plaintiffs were notified only after Reynolds swore under oath as to the facts and violations listed in (d) and was notified by the court of the criminal charges against them.

(f) From 7-2-1988 to 4-19-1993 a total of 21 complaints were called in to New Castle County Complaints 20 of those were either called in by Deborah Spayd or convinced to call on her behalf [sic].

(g) As a result of the Conduct of Spayd, Reynolds and New Castle County by and through its agents the Plaintiffs were humiliated, harassed, wrongfully prosecuted, maliciously prosecuted and had [*5] their Civil and Due Process rights violated and as a proximate course thereof suffered monetary damages by way of fines, legal fees, time loss from work, mental anguish, deprivation of use of their private and real property as well as mental anguish involving his family and children.

Wherefore, Plaintiffs pray for Judgement [sic] against the Defendants for costs, general and special damages, interests and any damages the court may find appropriate."

Plaintiffs' Amended Complaint, paragraph 24.

State Tort Law Claims

To the extent that plaintiffs' complaint alleges tortious conduct on the part of NCC and Reynolds, the Court must consider whether NCC and Reynolds are entitled to immunity under Delaware law. NCC and Reynolds contend that they are entitled to immunity under the County and Municipal Tort Claims Act, 10 Del. C. §§ 4010-13 (the "Act"). The section of the Act relied upon by NCC and Reynolds provides as follows:

(a) Except as otherwise expressly provided by statute, all governmental entities and their employees shall be immune from suit on any and all tort claims seeking recovery of damages. . . . .

10 Del. C. § 4011(a). As a county within the state [*6] of Delaware, NCC is unquestionably a "governmental entity" as defined in the Act. 10 Del. C. § 4010 (governmental entity "means any . . . county"). Similarly, Reynolds is an "employee" as defined in the Act. 10 Del. C. § 4010 (employee "means a person acting on behalf of a governmental entity in any official capacity . . . ."). These facts establish that both Reynolds and NCC are entitled to immunity under the Act "except as otherwise expressly provided" by some other statute. § 10 Del. C. § 4011.

While it is true that § 4012 sets forth several exceptions to immunity, none are relevant under the facts alleged in the complaint. Section 4012 provides that a governmental entity is subject to liability for injuries caused by such entity's negligence in: (1) the ownership, maintenance or use of motor vehicles; (2) the construction, operation or maintenance of public buildings; or (3) the sudden and accidental discharge of pollutants. 10 Del. C. § 4012. The instant case clearly does not involve governmental negligence in the operation motor vehicles, public buildings or the discharge of pollutants. Therefore, the exceptions to immunity set forth in § 4012 have no applicability in [*7] the instant case.

Section 4011(c) sets forth another limited exception to the immunity provided by § 4011(a). It provides as follows:

(c) An employee may be personally liable for acts or omissions causing property

damage, bodily injury or death in instances in which his or her governmental entity is immune under this section, but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious conduct.

10 Del. C. § 4011(c). This provision acts as waiver of immunity as to employees of governmental entities, but such waiver is effective only for specific kinds of injuries brought about by specific types of conduct. See *Carr v. Town of Dewey Beach*, D. Del., 730 F. Supp. 591, 601-02 (1990). In the instant case, plaintiffs do not allege that they suffered "property damage, bodily injury or death" as a result of Reynolds' actions. Thus, plaintiffs do not seek recovery for the kinds of injuries covered by the statute and, therefore, cannot use § 4011(c) to strip defendant Reynolds of his immunity.

Additionally, plaintiffs do not allege that Reynolds acted outside of the "scope of employment" or that [*8] any particular acts of Reynolds "were performed with wanton negligence or willful and malicious conduct." Such allegations, regarding type of conduct, are necessary in order to assert a claim under § 4011(c). All that can be inferred from the allegations in the complaint is that Reynolds, in his capacity as an employee of NCC, attempted to enforce NCC ordinances or regulations against the plaintiffs. There is no allegation that he did so in a manner evidencing wanton negligence or willful or malicious conduct. Plaintiffs' conclusory allegation that they were "maliciously prosecuted" as a result of Reynolds' conduct does not satisfy their burden under § 4011(c). Plaintiffs simply fail to allege that any specific conduct on the part of Reynolds was willful and malicious or constituted wanton negligence. Therefore, plaintiffs have failed to allege the type of conduct which, under § 4011(c), would strip Reynolds of his immunity.

Finally, plaintiffs contend that NCC and Reynolds are subject to suit under the State Tort Claims Act, 10 Del. C. §§ 4001-05. In this regard, plaintiffs argue that 10 Del. C. § 4001 acts as a waiver of sovereign immunity where it is alleged that a ministerial [*9] act was performed with gross or wanton negligence or in bad faith. In *Doe v. Cates*, Del. Supr., 499 A.2d 1175 (1985), the Supreme Court of Delaware rejected an identical argument. The *Doe* Court expressly decided that § 4001 does not act as a waiver of sovereign immunity. *Id.* at 1180-81. Rather, the Court concluded that § 4001 "must be applied to limit the State's liability where it has, *by some means independent of 10 Del. C. § 4001*, waived immunity." *Id.* at 1181 (emphasis supplied). For this reason, plaintiffs cannot rely upon the State Tort Claims Act to strip defendants NCC and Reynolds of the immunity to which they are otherwise entitled under 10 Del. C. § 4011.

Based on the foregoing, NCC and Reynolds are entitled to immunity under the County and Municipal Tort Claims Act, 10 Del. C. § 4010-13. Accordingly, summary judgment will be granted in favor of defendants NCC and Reynolds with respect to plaintiffs' state tort law claims. n1

n1 Even if plaintiffs were able to overcome the barrier of immunity, their malicious prosecution claim would be subject to dismissal for failure to state a claim because plaintiffs have not alleged that Reynolds and NCC lacked probable cause to initiate the prior proceedings. In order to state a claim for malicious prosecution, a plaintiff must allege, *inter alia*, that the defendant lacked probable cause to initiate the prior proceeding. See *Stidham v. Diamond State Brewery, Inc.*, Del. Super., 41 Del. 330, 21 A.2d 283, 285 (1941) ("Both elements of malice and want of probable cause must exist and the burden of showing both rests upon the plaintiff."); see also *Re v. Stern & Co.*, Del. Super., 40 Del. 408, 11 A.2d 328, 329 (1940) (malicious prosecution action dismissed due to plaintiff's failure to adequately allege want of probable cause).

[*10]

Federal Constitutional Claims Under 42 U.S.C. § 1983

Plaintiffs' complaint asserts claims based upon alleged deprivations of constitutional rights caused by defendants Reynolds and NCC. The Court must consider whether and to what extent such claims are cognizable under 42 U.S.C. § 1983. This statute "creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person." *Wilson v. Garcia*, 471 U.S. 261, 278, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985) (quoting *Almond v. Kent*, 4th Cir., 459 F.2d 200, 204 (1972)). State laws, such as Delaware's County and Municipal Tort Claims Act, do not provide immunity from suits initiated under 42 U.S.C. § 1983. *Martinez v. California*, 444 U.S. 277, 284 & n.8, 62 L. Ed. 2d 481, 100 S. Ct. 553, reh'g denied, 445 U.S. 920, 63 L. Ed. 2d 606, 100 S. Ct. 1285 (1980); *Kirschling v. Lake Forest School District*, D. Del., 687 F. Supp. 927, 937 (1988). To the extent that immunity is available as a defense to a suit initiated under § 1983, the burden of pleading such defense is upon the defendant. *Harlow* [*11] *v. Fitzgerald*, 457 U.S. 800, 815 & n.24, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982); *Gomez v. Toledo*, 446 U.S. 635, 640, 64 L.

Ed. 2d 572, 100 S. Ct. 1920 (1980)*. In the instant case, the Court will not consider the issue of immunity because the moving defendants have not raised immunity as a defense to plaintiffs' § 1983 claims.

State courts have concurrent jurisdiction with federal courts over actions initiated under § 1983. *Maine v. Thiboutot, 448 U.S. 1, 3 n.1, 65 L. Ed. 2d 555, 100 S. Ct. 2502 (1980); Marker v. Talley, Del. Super., 502 A.2d 972, 974 (1985)*. Therefore, it is appropriate for the Court to consider whether plaintiffs' complaint states a claim upon which relief can be granted under § 1983.

At the outset, the Court will consider the propriety of plaintiffs' claim as against NCC. In *Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)*, the Supreme Court held that local governing bodies and municipalities can be sued and held directly liable for money damages, declaratory or injunctive relief under § 1983. However, the Court concluded that a local governing body "cannot be held [*12] liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id. at 691* (emphasis in original). The Court instructed that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id. at 694* (emphasis supplied); see also *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 122 L. Ed. 2d 517, 113 S. Ct. 1160, 1162 (1993)* (recognizing the rule).

In the instant case, it is manifest from the complaint that the plaintiffs seek to hold NCC liable solely for the acts of Reynolds. The complaint does not allege that Reynolds was acting pursuant to an official "policy or custom" of NCC, nor does it allege that Reynolds was in a position of such authority that his actions "may fairly be said to represent official policy". See *Monell, 436* [*13] *U.S. at 690*. Because the complaint seeks to hold NCC liable *solely* on the theory of *respondeat superior*, plaintiffs have failed to state a § 1983 claim against NCC. Accordingly, NCC's motion to dismiss shall be granted.

Finally, the Court must address plaintiffs' § 1983 claims against defendant Reynolds. There are three essential elements to a § 1983 action: "(1) a person (2) taking an action under color of state law, (3) depriving another person of rights, privileges, or immunities." *Manchester v. Rzewnicki, D. Del., 777 F. Supp. 319 (1991)*, aff'd, 3rd Cir., 958 F.2d 364 (1992). In the instant case, plaintiff has adequately alleged the first two elements. The complaint at least infers that Reynolds was a "person" acting "under color of state law" at all times relevant to the complaint. Thus, the Court must consider whether the complaint adequately alleges that Reynolds' conduct caused a deprivation of a constitutional right.

The complaint alleges that Reynolds' actions deprived plaintiffs of property without due process of law. Plaintiffs were allegedly deprived of two types of property. First, the complaint alleges in conclusory fashion that plaintiffs were deprived [*14] of the use of their private and real property as a result of Reynolds actions. As to this allegation, the complaint contains no supporting factual averments which, if proven, would demonstrate that Reynolds unconstitutionally deprived plaintiffs of the use of their private and real property. Thus, this aspect of plaintiffs' § 1983 claim fails to satisfy the minimal pleading requirement imposed by Superior Court Civil Rule 8 — "a short and plain statement of the claim showing that the pleader is entitled to relief." Consequently, this aspect of plaintiffs' complaint fails to state a claim upon which relief can be granted.

The only other property deprivation claimed by plaintiffs involves monetary damages through the imposition of fines. It is unclear what "fines" plaintiffs are referring to in light of the allegation in paragraph 24(b) of the complaint that "none of these charges ever resulted in a conviction in a court of law and eventually most were dismissed as having no merit." In any event, plaintiffs must allege a "causal link" between the official conduct and the alleged deprivation of a constitutional right in order to state a claim under § 1983. *Manchester, 777 F. Supp.* [*15] *at 326; Signore v. City of McKeesport, W.D. Pa., 680 F. Supp. 200, 203 (1988)*, aff'd, 3rd Cir., 877 F.2d 54 (1989). Plaintiffs' complaint fails to allege any such causal link. The only allegation which could possibly be construed as a violation of plaintiffs' due process rights is the allegation that Reynolds improperly notified plaintiffs of the criminal charges by leaving a letter with a 15-year-old child. In order to satisfy the requirements of due process, state action affecting individual property rights must be preceded by "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950)*. "Actual knowledge of the pendency of an action removes any due process concerns about notice of

the litigation." *E.E.O.C. v. Pan American World Airways, Inc.*, 9th Cir., 897 F.2d 1499, 1508, cert. denied, 111 S. Ct. 55 (1990).

In the instant case, plaintiffs do not allege that they lacked actual knowledge of the prior criminal proceeding due to defective notice. [*16] There is no allegation that plaintiffs suffered judgment by default or were in any other way prejudiced in the prior criminal proceeding as a result of defective notice. Similarly, there is no allegation that plaintiffs were not afforded a fair opportunity to defend themselves in the prior proceedings. Based on the foregoing, the complaint fails to state a claim for deprivation of property without due process of law. Accordingly, plaintiffs' § 1983 claim based on this allegation must be dismissed.

Conclusion

For all of the foregoing reasons, the Motion to Dismiss filed by Paul Reynolds and New Castle County is hereby GRANTED.

IT IS SO ORDERED.

Judge John E. Babiarz, Jr.