IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER JOSEPH DAVIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-583-JJF |
| | : | |
| STEVEN A. BISHOP, et al., | : | |
| | : | |
| Defendants. | : | |

Christopher Joseph Davis, Pro se Plaintiff.

Kevin J. Connors, Attorney for Defendants.

**MEMORANDUM OPINION**

September 29, 2006
Wilmington, Delaware

**Farnan** District Judge

Presently before the Court are the Motion of Defendants Dewey Beach Police Department, Sam Mackert, Chief of Police and Town of Dewey Beach to Dismiss Plaintiff's Complaint (D.I. 14) and the Motion of Defendant Steven A. Bishop to Dismiss Plaintiff's Complaint (D.I. 18).  For the reasons set forth below, the Court will grant the motions.

## I.   **PROCEDURAL BACKGROUND**

Plaintiff Christopher Joseph Davis, an inmate at the Sussex Correctional Institute ("SCI") filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 10, 2005.  (D.I. 2.)  He proceeds pro se and was granted in forma pauperis status.  (D.I. 3.)  The allegations in the complaint revolve around actions taken on May 15, 2005, when Plaintiff was arrested following a traffic stop.

The complaint alleges that patrolman Steven A. Bishop ("Bishop") flung Plaintiff off the hood of Bishop's police car, forcibly cuffed and manhandled Plaintiff, and placed him under arrest.  (D.I. 2 at 3.)  Plaintiff alleges that Bishop denied him the right to use the bathroom.  Id.  He also alleges that Bishop failed to properly search his pants pocket which contained a lighter.  Id.  Plaintiff alleges this lighter later became a "cause of endangerment" to him while he was in protective custody.  Id.  Finally, Plaintiff alleges that the Dewey Beach

-1-

Police Department ("Police Department"), Chief of Police Sam Mackert ("Chief Mackert"), and the town of Dewey Beach ("Dewey Beach") are responsible for hiring and supporting "such gross incompetence, unprofessional violence." Id.

Plaintiff alleges that his arms were bruised "up and down their entire length", and he suffered nerve damage because the handcuffs were too tight and he was thrown about. Id. He asks that Bishop be charged with use of force and/or assault and endangering the welfare of a prisoner. Plaintiff also seeks compensatory damages.

Defendants filed motions to dismiss on March 28, 2006, and May 5, 2006, respectively. (D.I. 14, 18.) Because the motions contained matters outside the pleadings, on June 26, 2006, the motions to dismiss were converted to motions for summary judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The parties were given an opportunity to present all materials pertinent to a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (D.I. 25.)

## II.  **FACTS**

The police report prepared by Bishop states that on May 15, 2005, at approximately 1:00 AM, he saw Plaintiff drive down the center lane of a road in Dewey Beach, Delaware. (D.I. 14, Ex. B.)  Bishop pursued the driver, activated the emergency equipment, and hit the siren on numerous occasions to get the

-2-

driver's attention.  Id.  The vehicle finally stopped and backed
up into a private driveway.  Id.  Bishop stepped out of his
police vehicle, banged on the driver's vehicle, and told
Plaintiff to stop his vehicle and to exit.  (D.I. 14, Ex. B; D.I.
29, Exs. B, C.)  As soon as he was out of the vehicle Bishop
handcuffed Plaintiff.  Id.  Bishop detected a strong odor of
alcohol although Plaintiff stated that he had not been drinking.
(D.I. 14, Ex. B; D.I. 29, Ex. C at p. 17.)  Plaintiff was unable
to produce his registration or insurance card.  Id.

        According to Plaintiff, he told Bishop that he needed to
relieve himself, but Bishop would not allow him to go to the
bathroom.  (D.I. 29, Ex. B.)  According to Bishop, when Plaintiff
first exited his vehicle he asked to use the bathroom, and Bishop
responded by asking Plaintiff to perform field sobriety tests,
after which Plaintiff would be allowed to use the bathroom.
(D.I. 29, Ex. C at p. 25.)

        Bishop uncuffed Plaintiff so that he could conduct the field
sobriety tests.  According to Bishop, Plaintiff was unable to
perform the counting or alphabet test.  (D.I. 14, Ex. B; D.I. 29,
Ex. C at 18-20.)  Plaintiff's recollection is that he "did fine"
on both tests.  (D.I. 29, Ex. B.)  Bishop next attempted to have
Plaintiff perform the "one-leg stand test."  (D.I. 18, Ex. B.)
Bishop testified that he explained the test to Plaintiff three
times, and after the third time told Plaintiff that if he did not

-3-

perform the test it would be indicated that Plaintiff did not
want to perform it.  (D.I. 29, Ex. C at p. 21.)  Plaintiff then
sat on the hood of the police cruiser.  (D.I. 14, Ex. B; D.I. 29,
Ex. C at p. 21.)  Bishop told Plaintiff to get off the hood of
the patrol car because Plaintiff was not permitted to sit on it.
(D.I. 14, Ex. B; D.I. 29, Ex. C at p. 21)  According to
Plaintiff, he did not "quite get" what Bishop was saying and
asked Bishop to demonstrate what he wanted.  (D.I. 29, Ex. B.)
Plaintiff believed it was within his rights and that his question
was not unreasonable.  (D.I. 29, Ex. B.)

When Plaintiff did not get off the car by himself, Bishop
"grabbed him by both arms and flung him off the hood of the car."
(D.I. 29, Ex. C at p. 22.)  Bishop testified that Plaintiff was
uncooperative.  Id.  Plaintiff states that Bishop "suddenly and
violently" snatched him and attempted to throw him on the street.
(D.I. 29, Ex. B.)  Bishop reported that he and Plaintiff
wrestled, that his flashlight "went flying" and his pants were
torn.  (D.I. 14, Ex. B; D.I. 29, Ex. C at p. 22-23.)  According
to Plaintiff, the next thing he knew Bishop was slamming him to
the ground, cuffing him, and throwing him into the backseat.
(D.I. 29, Ex. B.)  According to Bishop, he called for backup and
two additional officers helped to handcuff Plaintiff.  (D.I. 14,
Ex. B; D.I. 29, Ex. C at p. 23.)  Bishop's actions caused
Plaintiff a physical injury.  (D.I. 29, Ex. B.)

-4-

Plaintiff was arrested for driving under the influence,
resisting arrest, criminal mischief, and driving in the center
lane.  (D.I. 14, Ex. B.) He was placed in the backseat of the
police cruiser and seatbelted.  Id.  Plaintiff was told to stay
in his seat while his vehicle was searched, but Plaintiff
"managed to get out of the seatbelt two more times," and after
being buckled a third time kicked out the right rear window of
the police vehicle.  (D.I. 14, Ex. B; D.I. 29, Ex. C at pp. 23-
24.)  A 13 inch crowbar was found under the seat of Plaintiff's
vehicle.  (D.I. 14, Ex. B.)  Bishop did not find any drugs or
alcohol.  (D.I. 29, Ex. C. at pp. 27-28.)

Plaintiff was taken to the Beebe Medical Center for
administration of a blood test, and on the way there he tried to
bite an officer on the shoulder.  (D.I. 14, Ex. B; D.I. 29, Ex. C
at p. 24.)  While at the hospital, Bishop noticed that Plaintiff
had urinated in his pants, and upon inspection, Bishop discovered
that Plaintiff had urinated in the back seat of the police car.
(D.I. 14, Ex. B; D.I. 29, Ex. C at p. 25.)

Next, Plaintiff was taken to the Dewey Beach Police
Department.  Bishop reported that on the way there Plaintiff
threatened to kill him.  (D.I. 14, Ex. B; D.I. 29, Ex. C at p.
26.)  Once at the police station Plaintiff was placed in a
holding cell and there he used a lighter and a matchbook to burn
a bench.  (D.I. 14, Ex. B; D.I. 29, Ex. C at p. 25.)  The

-5-

incendiary items were confiscated from Plaintiff. (D.I. 14, Ex. B.) Plaintiff also disassembled his watch and attempted to open a cell window. (D.I. 14, Ex. B; D.I. 29, Ex. C at p. 26.) Plaintiff was found guilty of driving under the influence of alcohol and drugs, reckless burning, offensive touching, and terror threats. (D.I. 14, Ex. C.)

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

The Court "accept[s] all well-pleaded allegations in the complaint as true, and view[s] them in the light most favorable to the plaintiff." Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Carino v. Stefan, 376 F.3d at 159.

### B. Summary Judgment

The Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

-6-

Fed. R. Civ. P. 56(c). The moving party bears the burden of
proving that no genuine issue of material fact exists.  See
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
586 n.10 (1986). "Facts that could alter the outcome are
'material,' and disputes are 'genuine' if evidence exists from
which a rational person could conclude that the position of the
person with the burden of proof on the disputed issue is
correct."  Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d
300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the
moving party has demonstrated an absence of material fact, the
nonmoving party then "must come forward with 'specific facts
showing that there is a genuine issue for trial.'"  Matsushita,
475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will
"view the underlying facts and all reasonable inferences
therefrom in the light most favorable to the party opposing the
motion."  Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236
(3d Cir. 1995).

The mere existence of some evidence in support of the
nonmoving party, however, will not be sufficient for denial of a
motion for summary judgment; there must be enough evidence to
enable a jury reasonably to find for the nonmoving party on that
issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249
(1986). If the nonmoving party fails to make a sufficient
showing on an essential element of its case with respect to which

-7-

it has the burden of proof, the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.  ANALYSIS

### A.  Excessive Force

Bishop argues that any action taken by him was reasonable and did not violate Plaintiff's Fourth Amendment rights.  He contends that he is entitled to qualified immunity.

Plaintiff argues that the totality of the circumstances did not justify the actions of Bishop and that Bishop's actions caused him bodily harm.  Plaintiff argues that Bishop was upset because Plaintiff was sitting on the police cruiser, and in his anger, Bishop attempted to throw Plaintiff to the street. Plaintiff argues that his clinging to Bishop was not resisting arrest, but was to avoid physical injury from impact.  To support his position that Bishop acted unreasonably, Plaintiff points to Bishop's use of vulgarity, banging of his fist on Plaintiff's car, and admission under oath that he "flung" Plaintiff off the hood of the car.

Plaintiff argues that marks on his arms and wrists took over a month to fade, and that 14 months later he continues to be on constant medication for the pain and nerve damage caused by the assault and his subsequent treatment on the morning in question. (D.I. 29 at 2.)  Plaintiff's affidavit states only that Bishop

-8-

caused him "physical injury." (D.I. 29, Ex. B.)

"[C]laims that law enforcement officers have used excessive force. . .in the course of an arrest. . .should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." Graham v. Connor, 490 U.S. 386, 395 (1989). "[T]he 'reasonable-ness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397; Kopec v. Tate, 361 F.3d 772, 777 (3d. Cir. 2004); Mosley v. Wilson, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

As to qualified immunity, the Court must determine whether the facts alleged rise to the level of a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). The burden on this issue lies with Plaintiff. Sherwood v. Mulvihill,

113 F.3d 396, 399 (3d Cir. 1997).  If no constitutional right is
violated, there is no necessity for further inquiries concerning
qualified immunity.  Saucier, 533 U.S. at 201.

By Bishop's own admission, when Plaintiff refused to get off
of the patrol car he grabbed Plaintiff by both arms and flung him
off the hood of the car.  While not clear, it appears that
Plaintiff alleges these actions resulted in bruising up and down
his arms.  (D.I. 2 at V.)  Plaintiff does not dispute that after
he was handcuffed he continued to be disruptive.  The facts are
that Plaintiff refused to remain seatbelted, he kicked out the
rear window of the police vehicle, and he attempted to bite a
police officer.  Although Bishop's actions in removing Plaintiff
from the hood of the police vehicle may have been unnecessary,
Bishop was confronted with an uncertain situation with an
individual who appeared to be intoxicated and who was
uncooperative.  Plaintiff was given an opportunity to file
supportive material with the Court.  Despite this opportunity,
Plaintiff did not substantiate the injuries he allegedly suffered
either by his affidavit or medical documentation.

A reasonable jury could conclude that the force used was
reasonable given the conduct of Plaintiff.  Accordingly, the
Court finds that any force that may have been applied does not
rise to the level of a constitutional violation.  See Nolin v.
Isbell, 207 F.3d 1253, 1255, 1257 (11th Cir. 2000)(no excessive

-10-

force where officer grabbed plaintiff from behind, threw him
against a van three or four feet away, kneed him in the back,
pushed his head into the side of the van, and searched his groin
in an uncomfortable manner); Foster v. Metro. Airports Comm'n,
914 F.2d 1076, 1082 (8th Cir. 1990)(no excessive force where
plaintiff was pushed against a wall twice on the way to the
holding area, [but] also testimony no injury as a result of being
pushed); Ankele v. Hambrick, No. CIV.A. 02-4004, 2003 WL 21223821
(E.D. Pa 2003), aff'd, 136 Fed. Appx. 551 (3d Cir. 2005)(show of
force of slamming plaintiff onto hood of patrol car reasonable
given the uncertainty presented by the arrestee's conduct).

     Plaintiff also contends that he suffered nerve damage
because he was handcuffed too tightly.  Both Plaintiff and Bishop
have provided their version of the facts surrounding Plaintiff's
arrest; Plaintiff by way of affidavit, and Bishop by way of his
police report and court testimony.  There is no indication by
either Plaintiff or Bishop that at any time Plaintiff complained
to Bishop that the handcuffs were too tight or that he was in
pain.  Moreover, while Plaintiff argues that he has endured pain
for 14 months and also has nerve damage, his affidavit contains
no statements to support his position.  Plaintiff merely states
that the actions of Bishop "caused [him] physical injury."  (D.I.
29, Ex. B).  Also there is no mention in Plaintiff's affidavit of
any type of medical treatment or care.  Nor does Plaintiff's

-11-

affidavit describe his alleged injury.

Construing the facts in the light most favorable to Plaintiff as the Court must do, as to the handcuffing claim, it cannot be said that Bishop violated Plaintiff's constitutional rights.  See Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005) (alleged tightness of arrestee's handcuffs did not constitute excessive force where arrestee demonstrated no expression or sign of discomfort at the time he was handcuffed and he did not seek or receive medical treatment after the fact); Johnson v. Watson, 113 Fed. Appx. 482 (3d Cir. 2004) (police officers entitled to qualified immunity from excessive force claim that handcuffs were too tight on arrestee, who later was prescribed medication for swelling, where it was clear that officers used minimum amount of force to take arrestee into custody); but see Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004) (police officer's alleged actions of placing excessively tight handcuffs on arrestee and needless failing to respond for ten minutes to arrestee's pleas to loosen them, and which resulted in permanent nerve damage, constituted excessive force).

The facts do not rise to the level of excessive force, and because Plaintiff has failed to make a showing of a constitutional violation, there is no need to engage in further qualified immunity analysis.

In the same vein, the facts do not support Plaintiff's claim

that Bishop's refusal to allow him to go to bathroom violated his
constitutional rights.  At the time Plaintiff made his request to
use the bathroom the request was not refused, but was delayed.
Bishop told Plaintiff that the field sobriety tests had to be
completed before Plaintiff could use the bathroom.  Immediately
thereafter the situation between the two deteriorated, and
neither the complaint, nor the facts before the Court make
reference to further bathroom requests.  Construing the facts
most favorably to Plaintiff, it cannot be said that Bishop's
refusal was unreasonable given the fact that Bishop was in the
midst of attempting to assess Plaintiff's condition.

     Finally, the remaining allegation against Bishop does not
rise to the level of a constitutional violation.  Plaintiff
alleges that he was not properly searched, and because his
lighter was not discovered this became a "cause of endangerment"
during the time he was in protective custody.  The facts before
the Court are that after Plaintiff was placed in a holding cell,
he attempted to burn a bench in the cell using the lighter and a
book of matches.  At that point in time the items were removed
from Plaintiff's possession.

     The Fourth Amendment guards against unreasonable searches
and seizures.  Graham v. Connor, 490 U.S. 386, 395 (1989).  The
Supreme Court has stated that "[t]he test of reasonableness under
the Fourth Amendment is not capable of precise definition or

-13-

mechanical application."  Bell v. Wolfish, 441 U.S. 559 (1979)
("Courts must consider the scope of the particular intrusion, the
manner in which it is conducted, the justification for initiating
it, and the place in which it was conducted.").  Id.

Here, Plaintiff does not allege that there was an
unreasonable search.  Rather, he alleges that the search was
improper because his lighter was not discovered.  Plaintiff's
novel theory attempts to connect the alleged "improper search" to
his own actions of setting a fire in the holding cell.
Plaintiff's claim that the alleged improper search violated his
Fourth Amendment rights is spurious.  He fails to state a claim
upon which relief may be granted.  Therefore, the claim will be
dismissed.

Based upon the foregoing, Bishop will be granted summary
judgment as to the excessive force claim and the remaining claims
against him will be dismissed for failure to state a claim upon
which relief may be granted.

## B.   Personal Involvement/Respondeat Superior

Chief Mackert moves for dismissal on the basis that the
claims against him do not allege sufficient facts to support a
cognizable legal claim.  Chief Mackert argues there is no
respondeat superior liability in a § 1983 action, yet Plaintiff
complains he is liable because he, along with the Police
Department and Dewey Beach, "hired" Bishop.  Chief Mackert also

-14-

argues that Plaintiff did not set forth any specific allegations
of his personal involvement in the alleged violation of
Plaintiff's constitutional rights.

Plaintiff responds that he does not intend to hold Chief
Mackert liable under a respondeat superior theory, yet he argues
that he seeks to hold Chief Mackert responsible in his individual
capacity as the supervising officer overseeing Bishop.  (D.I.
22.)  Plaintiff argues that Chief Mackert, as supervisor, was
responsible for Bishop, that Chief Mackert created an atmosphere
of indifference to civil liberty violations, and that Chief
Mackert failed to take appropriate steps to cite and correct
behaviors through policy, training, and reprimand.  Plaintiff
argues there remains a genuine issue of material fact and that
summary judgment is inappropriate.

When bringing a § 1983 claim, a plaintiff must allege that
some person has deprived him of a federal right, and that the
person who caused the deprivation acted under color of state law.
West v. Atkins, 487 U.S. 42, 48 (1988).  Personal involvement can
be shown through allegations that a defendant directed, had
actual knowledge of, or acquiesced in, the deprivation of a
plaintiff's constitutional rights."  Evancho v. Fisher, 423 F.3d
347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d
1195, 1207 (3d Cir. 1988); see Monell v. Department of Social
Services, 436 U.S. 658, 694-95 (1978).  Supervisory liability may

-15-

attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed.Appx. 240 (3d. Cir. 2005).

Plaintiff concedes that he is not seeking liability under a respondeat superior theory, but nonetheless argues that based upon Chief Mackert's supervisory position, he is responsible for Bishop. The law is clear that a § 1983 action cannot lie against Chief Mackert based upon his supervisory position and the claims against him will be dismissed. Moreover, the complaint does not contain any allegations that Chief Mackert was personally involved in the traffic stop, the arrest, the actions taken after the arrest, or any other alleged constitutional violation.

The motion to dismiss based upon lack of personal involvement and respondeat superior is well-taken and will be granted.

## C.   Municipal Liability

Defendants Police Department, Dewey Beach, and Chief Mackert move for dismissal on the basis that the complaint fails to aver the existence of a challenged policy or custom attributable to them, the execution of which caused Plaintiff to suffer injuries.

-16-

Plaintiff contends that these Defendants should have been aware there existed gross inadequacy in training procedures for police officers. He argues that it is obvious there is a need for more or different training. Plaintiff also argues that Dewey Beach should be held liable because it had excessive notice of prior misbehavior by its officers, yet failed to take remedial steps. Finally, Plaintiff contends that summary judgment is inappropriate because no discovery has taken place. He posits that discovery will reveal evidence of Defendants' wrongdoing.

A municipality may not be held liable in a § 1983 action under a respondeat superior theory. See Monell v. Department of Soc. Services, 436 U.S. 658, 691 (1978). In order to establish municipality liability under § 1983 for failure to train, a plaintiff must establish that the municipality had a policy or custom that caused his constitutional injury. Id. at 694-95. A municipality may be held liable only if its policy or custom is the "moving force" behind a constitutional violation. See Board of the County Comm'rs v. Brown, 520 U.S. 397, 400 (1997); Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992) (stating that a municipality is only liable when the municipality itself is the "wrongdoer"). Finally, in order for municipal liability to exist, there must still be a violation of the plaintiff's constitutional rights. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citations omitted).

-17-

As discussed, the Court has determined that Plaintiff has not established a constitutional injury resulting from the actions taken on May 15, 2005, when he was stopped, arrested, taken to the hospital, and then to the Dewey Beach Police Department. As a result, Plaintiff cannot pursue a claim against the Police Department, Dewey Beach, or Chief Mackert because there was no violation of his constitutional rights.

Plaintiff argues that he was not given an opportunity for discovery as to the municipal liability claim. His complaint, however, rises and falls upon his claim of excessive force by Bishop. The remaining claims are ancillary to the excessive force claims. Both Plaintiff and Bishop provided facts to the Court in support of their respective positions, and as previously discussed, there was no violation of Plaintiff's constitutional rights.

Based upon the foregoing, summary judgment will be granted in favor of the Police Department, Dewey Beach, and Chief Mackert against Plaintiff.

## D. Delaware Tort Claims Act

Plaintiff argues that Defendants Police Department, Chief Mackert, and Dewey Beach are liable because there existed "some gross inadequacy in training procedures for police officer" and that Defendants had "excessive notice of prior misbehavior by its officers and failed to take remedial steps." (D.I. 22 at 2-3.)

-18-

Defendants, apparently out of an abundance of caution, construe

Plaintiff's position as alleging a tort.  Defendants argue that

governmental entities and their employees are immune from

liability pursuant to the Delaware County and Municipal Tort

Claims Act ("Tort Claims Act"), Del. Code Ann. tit. 10, § 4010 et

seq.  They further argue that the allegation of gross

incompetence and unprofessional violence does not state a claim

upon which relief may be granted.

The Tort Claims Act provides that "except as otherwise

expressly provided by statute, all governmental entities and

their employees shall be immune from suit on any and all tort

claims seeking recovery of damages."  Del. Code Ann. tit. 10, §

4011(a).  It further provides for immunity in the performance or

failure to exercise or perform a discretionary function or duty,

whether or not the discretion be abused and whether or not the

statute, charter, ordinance, order, resolution, regulation or

resolve under which the discretionary function or duty is

performed is valid or invalid.  Id. at § 4011(b)(3).  The Tort

Claims Act provides, however, that an employee may be personally

liable for acts and omissions causing property damage, bodily

injury or death in instance in which the governmental entity is

immune under this section, but only for those acts which were not

within the scope of employment or which were performed with

wanton negligence or willful and malicious intent.  Del. Code

Ann. tit. 10, § 4011(c).

With regard to any actions taken by Defendants in the performance of their official functions, they are immune from suit. See Del. Code Ann. tit. 10, § 4011(b)(3); Collins v. Figueira, C.A. No. 04C-06-009(RBY), 2006 WL 1817092 (Del. Super. Ct. June 23, 2006) (Police Department immune from suit under the Tort Claims Act for claims that it was negligence because it failed to ensure that patrolmen complied with the department's procedures and fundamental guarantees of the U.S. Constitution). Further, the evidence before the Court does not indicate that any of the defendants acted with wanton negligence or willful and malicious intent. Rather, the evidence is that under the circumstances, the actions were reasonable. Accordingly, summary judgment will be granted to the Police Department, Chief Mackert and Dewey Beach inasmuch as they are immune from suit under the Delaware Tort Claims Act.

## V.    CONCLUSION

For the reasons discussed above, the Court will grant the Motion of Defendants Dewey Beach Police Department, Sam Mackert, Chief of Police and Town of Dewey Beach to Dismiss Plaintiff's Complaint (D.I. 14). The Court will also grant the Motion of Defendant Steven A. Bishop to Dismiss Plaintiff's Complaint (D.I. 18). An appropriate order will be entered.